UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

ARLINDO DA SILVA AND JEANDERSON DA
SILVA,

                                                    REPORT AND
                          Plaintiffs,               RECOMMENDATION

        - against -                                 CV 05-2989 (ARR)(MDG)

BENNET STREET DEVELOPMENT CORP. AND
WILLIAM RADU, individually,


                          Defendants.

- - - - - - - - - - - - - - - - - X


        Plaintiffs in this action seek recovery of unpaid wages from

defendants Bennet Street Development Corp. ("Bennet Street") and

William Radu, asserting claims under the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 et seq., as well as pendent state claims

under the New York Labor Law and common law for breach of contract

and quantum meruit.  After entry of default against defendants (ct.

doc. 22), Judge Ross referred the plaintiffs' motion for a default

judgment to me to report and recommend on the amount of damages and

attorneys' fees and costs.  Defendants have not filed opposition to

the motion, nor have they appeared at any point in these

proceedings.

        After review of the submissions, this court recommends an

award of damages as set forth more fully below.

The following facts adduced from plaintiffs' submissions are undisputed and are taken as true for purposes of deciding this motion.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (citations omitted).

From around August to December 2004, plaintiffs Arlindo Da Silva ("Arlindo") and Jeanderson Da Silva ("Jeanderson") were employed by defendants as laborers.  Their duties consisted primarily of "the installation of blocks, ceramics, stucco, and bricks," Complaint ("Compl.") at ¶¶ 6-7, at sites around Staten Island.  Both plaintiffs typically worked at least ten hours a day during six and sometimes seven-day work weeks.  Id. ¶ 13. Radu occasionally failed to pay plaintiffs non-overtime or straight time hours and almost always did not provide compensation for overtime hours.  Id. ¶¶ 14-15.  In his declaration submitted in support of the motion for default judgment ("Arlindo Decl."), Arlindo Da Silva describes the work that he and his son, Jeanderson, performed for defendants on a number of construction projects over a 17 week period from August 2004 through December 2004.  See ct. doc. 19-2.  Based on his recollection and contemporaneous notes that he took, he describes the amounts owed for work on projects that were not paid as promised, sets forth in a chart the estimated number of hours that he worked and claims that he is owed a total of $10,641.68 in unpaid straight time, overtime wages and other statutory damages.  Id.  In his declaration containing similar information,

plaintiff Jeanderson Da Silva also provides a chart of hours worked and seeks recovery of $7,966.00. <u>See</u> ct. doc. 19-3. Plaintiffs also seek an award of prejudgment interest, attorneys' fees and costs.

The details of the work performed and amounts claimed will be discussed below. For the most part, this Court recommends accepting the amount of unpaid straight time wages and number of hours worked claimed by plaintiffs. However, because of apparent typographical and computational errors and discrepancies between the information provided by plaintiffs, adjustments have been made to the hours claimed, which affects the amount of damages that may be awarded.

## DISCUSSION

### I. Governing Legal Standards

In deciding whether a default judgment should be entered, a court may accept all well-pleaded allegations in the unanswered complaint as true but must still satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed. <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981) ("[A] district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action").

A defendant's default is an admission of all well-pleaded factual allegations in the complaint except those relating to

damages. See Greyhound, 973 F.2d at 158; Au Bon Pain, 653 F.2d at 65. Nevertheless, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Leider v. Ralfe, No. 01 Civ. 3137, 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004) (quoting In re Indus. Diamonds Antitrust Litig., 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000)).

A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct; that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged. See Greyhound, 973 F.2d at 159. The movant need prove "only that the compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." Id. The court must determine the amount of damages, actual or statutory, that may be assessed. The court must also ensure that there is a reasonable basis for the damages specified in a default judgment. The court has the discretion to require an evidentiary hearing or to rely on detailed affidavits or documentary evidence in making this determination. See Chun Jie Yin v. Kim, No. 07 CV 1236 (DLI)(JO), 2008 WL 906736, at *2 (E.D.N.Y. Apr. 1, 2008) (collecting cases); Fed. R. Civ. P. 55(b)(2). The moving party is entitled to all reasonable inferences from the evidence it offers. See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009); Au Bon Pain, 653 F.2d at 65 (citing TWA, Inc. v. Hughes, 308 F. Supp. 679, 683 (S.D.N.Y. 1969)).

## II. **Liability**

### A. Fair Labor Standards Act

Plaintiffs bring three claims under the FLSA, alleging that defendants violated sections 206, 207 and 211 of the statute. See Compl. ¶¶ 18-24, 37-41. The FLSA was enacted by Congress "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency and general well-being of workers.'" Barrentine v. Arkansas-Best Freight Sys. Inc., 450 U.S. 728, 739 (1981) (quoting 29 U.S.C § 202(a)) (footnote omitted). Section 206 of the FLSA sets forth a minimum hourly wage employers[1] must pay their employees who engage in work affecting interstate commerce, id. § 206(a)(1)(C), which for the period at issue was $5.15. See U.S. Dept. of Labor, History of Federal Minimum Wage Rates Under the Fair Labor Standards Act, 1938-2007, http://www.dol.gov/esa/minwage/chart.htm (last visited Sept. 29, 2008). Section 207 specifies that an employer must pay employees who work in excess of forty hours during a workweek for the excess hours "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Employers in violation of either of these provisions "shall be

---

[1]The terms "employer" and "employee" are defined broadly under the FLSA. Section 203(d) defines an employer to include "any person acting directly or indirectly in the interest of an employer in relation to an employee" while an "employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(d),(e)(1).

liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." Id. § 216(b).

In addition, section 211(c) of the FLSA requires that covered employers "make, keep and preserve . . . records" of their employees with respect to "wages, hours, and other conditions and practices of employment" for a certain period of time. Id. § 211(c). The information that must be kept in these records are set forth in 29 C.F.R. § 516.2(a)(1)-(12).[2] Section 215(a)(5) of the FLSA makes it unlawful for any employer covered under the statute to violate any of these record-keeping provisions. See 29 U.S.C. § 215(a)(5).

Plaintiffs allege in their complaint: (1) that "[d]efendants employed Plaintiff Arlindo Da Silva [and Plaintiff Jeanderson Da Silva] as . . . worker[s] performing installation of blocks, ceramics, stucco, and bricks from on or about August 12, 2004 through December 2, 2004;" (2) that defendants "operated as an enterprise engaged in commerce and/or the production of goods for commerce;" (3) that during the relevant period plaintiffs themselves "were engaged in interstate commerce;" (4) that plaintiffs and defendants agreed upon a regular wage rate of

_____

[2] Such regulations "have the force of law, and are to be given controlling weight unless they are found to be arbitrary, capricious, or manifestly contrary to statute." Freeman v. Nat'l Broadcasting Co., 80 F.3d 78, 82 (2d Cir. 1996) (citations omitted).

$10.96 per hour for the relevant employment period; (5) that "[p]laintiffs routinely worked six or more days per week and in excess of ten hours per day and forty hours per week;" (6) that "at various times during Plaintiff's employment, Defendants did not pay Plaintiffs for the time they spent working;" (7) that "[d]uring all periods of Plaintiff's employment, Defendants failed to pay Plaintiffs overtime premiums for their work hours beyond forty in a week"; and (8) that "[d]efendants willfully and intentionally failed to pay Plaintiffs their contract wages [and] overtime premiums." See Compl. ¶¶ 6-15, 17. Plaintiffs also allege that "[u]pon information and belief, Defendants intentionally failed to maintain adequate and accurate written records for the hours worked and wages earned by Plaintiffs in order to facilitate their exploitation of Plaintiffs' labor." Id. ¶ 38. Plaintiffs confirm in their declarations that they regularly worked more than 10 hours a day and 40 hours a week without overtime compensation. Plaintiffs further state that defendant Radu directed them in their work each date and was on-site each day except for Sundays. Arlindo Decl. ¶ 6; Jeanderson Decl. ¶ 6.

Based on these undisputed allegations in the complaint and default submissions, the court finds that liability is properly imposed against defendants for violations of the overtime provisions and record-keeping provision of the FLSA. Plaintiffs also allege that defendants failed to pay them at all for their work at various times during the relevant employment period. For

the workweeks in which plaintiffs received no salary at all for work performed, defendants have not paid even the "minimum weekly requirements" of section 206. Accordingly, liability is properly imposed against defendants under the FLSA.

B. New York Labor Law

New York's Labor Law is the state analogue to the federal FLSA. Although the Labor Law "does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of sales," it otherwise mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime, including the minimum wage during the relevant period. Chun Jie Yin, 2008 WL 906736, at *4; see N.Y. Lab. Law § 652 (minimum hourly wage); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1(a)(1) (same); id. § 142-2.2 (same methods as employed in the FLSA for calculating overtime wages). The New York Labor Law also expressly provides that employees are entitled to recover all unpaid wages. See N.Y. Lab. Law § 198(3); Chun Jie Yin, 2008 WL 906736, at *6; Jowers v. DME Interactive Holdings, Inc., No. 00 Civ. 4753, 2006 WL 1408671, at *9 (S.D.N.Y. May 22, 2006).

One notable difference in New York law is that it contains a "spread of hours" provision which allows a plaintiff to recover an extra hour's worth of pay at the minimum wage for each day that an employee works in excess of ten hours. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4. Section 663 of the Labor Law also expressly authorizes an employee to sue his or her employer to

recover unpaid wages otherwise due to him or her under the statute.  N.Y. Lab. Law § 663(1).  Like its federal counterpart, the Labor Law requires that employers maintain records for their employees who fall under the Labor Law's wage protections.  See N.Y. Lab. Law §§ 195, 661; N.Y. Comp. Codes R. & Regs. tit. 12, § 138-3.1 (specifying content of employer's records).

For the same reasons discussed above with respect to the FLSA, the allegations in the complaint and default submissions are sufficient to impose liability on defendants under the Labor Law's minimum wage and overtime provisions as well as its record-keeping requirement.  See Debejian v. Atl. Testing Labs., Ltd., 64 F. Supp. 2d 85, 87 n.1 (N.D.N.Y. 1999) (finding New York Labor Law provisions "substantially similar to the federal scheme" such that its analysis of federal law would apply equally to claims brought under the FLSA and New York law).

Furthermore, the court finds that plaintiffs are entitled to recover their "spread of hours" pay under the Labor Law based upon the undisputed allegations that they had regularly worked over 10 hours each workday and were not given an extra hour's worth of wages at minimum wage for those days.  See Compl. ¶ 28. Because plaintiffs also allege that they are laborers who defendants have failed to compensate for either straight time or overtime work during the relevant period, liability is properly imposed for violation of section 190(4)'s requirement that compensation for "manual workers" be paid in seven days.  See id. ¶¶ 30-36.

## III. **Damages**

### A.  Recoverable Damages

Under the FLSA, plaintiffs who prevail under either section 206 or 207 are entitled to "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  Also, "a plaintiff who prevails on a cause of action under the state law is entitled to the full amount of wages owed, not just the statutory minimum wage for the hours worked."  Chun Jie Yin, 2008 WL 906736, at *4; see also N.Y. Lab. Law § 198(3) ("All employees shall have the right to recover full wages . . . accrued during the six years previous to the commencing of such action").  In addition, liquidated damages may be awarded under the FLSA, see 29 U.S.C. § 216(b), and for "willful" violations of the New York Labor Law in the amount of "twenty-five percent of the total amount of wages found to be due."  N.Y. Lab. Law § 198(1-a).

In calculating damages, this court relies on the submissions of plaintiffs and has not required a hearing.  The Second Circuit has expressly endorsed this approach so long as the court has "'ensured itself that there was a basis for the damages specified in the default judgment.'"  Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).  Plaintiffs have each submitted a sworn declaration containing information as to hours worked and rates

-10-

of pay based on estimation and recollection as well as on the contemporaneous notes of Arlindo Da Silva regarding the work that he, Jeanderson and another worker performed. The information provided by plaintiffs is sparse, at best. However, in the default context, where the defendants have failed to dispute plaintiffs' allegations, I find that plaintiffs have provided a sufficient basis for determination of damages.

Generally, an employee-plaintiff under the FLSA "'has the burden of proving that he performed work for which he was not properly compensated.'" Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), superseded on other grounds by The Portal-to-Portal Act of 1947, 29 U.S.C. § 251, et seq. As the Supreme Court recognized in Anderson, "employees seldom keep . . . records [of hours worked] themselves; even if they do, the records may be and frequently are untrustworthy." Id. Therefore, the easiest way for an FLSA plaintiff to discharge his or her burden of proof is, generally, to "secur[e] the production of such records" from the employer, who has the duty for their maintenance under section 11(c) of the FLSA. Id. However, by defaulting, defendants have deprived the plaintiffs of the necessary employee records required by FLSA, thus hampering plaintiffs' abilities to prove their damages.

In addressing the problem of proof faced by employees, the Supreme Court in Anderson held that "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient

evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. As courts have found, a plaintiff can meet this burden "by relying on recollection alone." Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005); accord Park v. Seoul Broadcasting Sys. Co., No. 05 CV 8956, 2008 WL 619034, at *7 (S.D.N.Y. March 6, 2008); Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048, 2007 WL 313483, at *24 (S.D.N.Y. Feb. 1, 2007). Moreover, "[i]n the absence of rebuttal by defendants," Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 625 (S.D.N.Y. 1998), or "[w]here the employer has defaulted, [as here, the employee's] recollection and estimates of hours worked are presumed to be correct," Pavia v. Around the Clock Grocery, Inc., No. 03 CV 6465, 2005 WL 4655383, at *5 (E.D.N.Y. Nov. 15, 2005). "The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with [the FLSA's record-keeping provisions]." Anderson, 328 U.S. at 688.

New York law goes one step further and requires that employers who fail to maintain the appropriate records "bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements." N.Y. Lab. Law § 196-a. With this framework in mind the court proceeds to its calculation of damages.

B.    Determination of Damages

       1.    "Straight Time" Unpaid Wages

Plaintiffs seek to recover unpaid wages for work performed on various projects under the employ of defendants.

*Block Work*.  Plaintiffs state that they contracted with defendants to be paid for blocks that they and Jose, a co-worker who has not joined this suit, installed.  According to plaintiffs' recollection and Arlindo's notes, these three workers were to be paid $4 for every block installed and, over the course of 53 days, installed 5,169 blocks.  Arlindo Decl. ¶ 11; Jeanderson Decl. ¶ 11.  Multiplying the $4 piece rate by the 5,169 blocks installed yields total earnings of $20,676.00.  See Bodden Decl. ¶ 18.  According to plaintiffs, defendants had paid them a total of $14,000 for the block work, from which Jeanderson received 24% and Jose and Arlindo each received one-half of the balance, or 38%.  Arlindo Decl. ¶¶ 13-14; Jeanderson Decl. ¶¶ 13-14.  Plaintiffs seek, and I recommend, that the Court award plaintiffs damages for unpaid wages based on allocation of $6,676.00 ($20,676.00 - 14,000) according to these percentages as follows:  Arlindo -- $2,536.88 and Jeanderson -- $1,602.24.  Arlindo Decl. ¶ 14; Jeanderson Decl. ¶ 14.

*Other Projects*.  In addition, plaintiffs describe a number of jobs that they performed for defendants for which they did not receive compensation at the daily wages agreed.  See Arlindo Decl. ¶¶ 16-20; Jeanderson Decl. ¶¶ 16-19.

First, plaintiffs claim that defendants did not pay them for

-13-

5 hours of work on August 21, 2004 and 14 hours on September 10, 2004 on a basement flooring project at Sand Lane. Arlindo Decl. ¶ 16; Jeanderson Decl. ¶ 16. Plaintiffs state that the defendants promised to compensate them at rates of $160 per day for Arlindo and $140 per day for Jeanderson and seek $240 in unpaid wages for Arlindo and $210 for Jeanderson for one and one-half days work at the promised rates. Id. I find these allegations sufficient to establish entitlement to the unpaid wages claimed.

Both plaintiffs also claim that they were not paid for one and one-half days of work at a promised rate of $160 per day for Arlindo and $140 per day for Jeanderson for cement work at Hatfield Street at an unspecified time. Arlindo Decl. ¶ 18; Jeanderson Decl. ¶ 17. Although neither can recall either the dates on which this work took place or the time spent on the project, they do state that they performed the cement work and that defendants failed to pay the wages promised. Id. The court finds such proof a sufficient "basis for a reasonable inference as to the extent of damages." Anderson, 328 U.S. at 688 (citations omitted). To deny plaintiffs recovery and "relieve the wrongdoer from making any amend for his acts," especially where, as here, defendants have clearly abdicated their duties under the FLSA, "would be a perversion of fundamental principles of justice." Id. (internal quotation marks and citation omitted). Thus, plaintiffs are entitled to unpaid wages of $240 for Arlindo and $210 for Jeanderson.

Both plaintiffs also seek to recover unpaid wages for work at Hatfield Street in November 2004. Arlindo claims he was to be paid at a daily rate of $150 for sheetrock and stucco work and Jeanderson at a daily rate of $140 for sheetrock work. Arlindo Decl. ¶ 19; Jeanderson Decl. ¶ 19. Arlindo claims $1,200 for eight days of work and Jeanderson claims $770 for five and one-half days of work. Arlindo Decl. ¶ 19; Jeanderson Decl. ¶ 19. Again, I find that plaintiffs' allegations that they did perform work for the number of days claimed and the amount of the agreed daily rate of pay sufficient to establish their entitlement to the unpaid wages of $1,200 claimed by Arlindo and $770 claimed by Jeanderson.

Both plaintiffs also seek recovery of unpaid wages for three days of work in December. Arlindo and Jeanderson stated that they each worked eleven hours on December 1, 2004 and ten hours on December 2, 2004 installing sheetrock and cleaning floors at Hatfield Street and nine hours on December 3, 2004 installing limestone at another site on Carey Avenue. Arlindo Decl. ¶ 20; Jeanderson Decl. ¶ 18. According to plaintiffs, defendants had agreed to pay Arlindo and Jeanderson $160 and $140 per day, respectively, for the work but failed to carry out their promise. Id. At the daily rate claimed, I find Arlindo entitled to the $480 in unpaid wages sought and Jeanderson to $420. Id.

Last, plaintiff Arlindo seeks to recover $892 in unpaid wages for 3 days of work installing stucco as agreed by defendants. Arlindo Decl. ¶ 17. Arlindo could not remember the

specific dates that he worked, but was able to recall that he
worked one day in August for 14 hours, one day in September for
an unspecified number of hours and one day in November for 11.5
hours.  Id.  Again, I find this information sufficient to
establish Arlindo's entitlement to recover $892 in unpaid wages
for the stucco project.

    In finding wages due for the unpaid jobs claimed, this Court
has considered the reasonableness of the inferences and
conclusions drawn from plaintiffs' allegations in the context of
other available information.  There are some discrepancies in the
information provided by plaintiffs.  In particular, plaintiffs'
specific allegations regarding the jobs worked for which they
seek unpaid wages do not entirely correspond with the information
reflected in the charts they included in their declarations.
Also, both the allegations and data on the charts regarding type
of work performed do not always conform with the information for
the same dates reflected in the notes that Arlindo had attached
to his declaration.  For example, plaintiffs allege that in
November, Arlindo worked eight days and Jeanderson five and one-
half days performing sheetrock and stucco work at the Hatfield
location.  However, their charts reflect that they performed
block work for most of the days in November and there are only
four remaining days listed for other, unspecified work.  Compare
Arlindo Decl. ¶ 19 with chart at ¶ 12; Jeanderson Decl. ¶ 18 with
chart at ¶ 12.  Also, the number of days plaintiffs attributed to
block work in November on their charts are far greater than the

-16-

number of entries in Arlindo's notes which refer to a smaller number of days for "bloco" and a greater number of days for other types of work. Similarly, although both claim that they performed flooring work at Sand Lane on September 10, 2004, their charts reflect that both performed sheetrock work for seven days during the week beginning September 5, 2005. Arlindo Decl. ¶¶ 12, 16; Jeanderson Decl. ¶¶ 12, 16. The charts also do not account for some of the types of work described by plaintiffs in their declarations with respect to their claims for unpaid wages.

Notwithstanding these discrepancies, I recommend accepting the plaintiffs' specific allegations in their declarations regarding the jobs for which they were not paid. As plaintiffs state, the charts contain estimates of the number of days worked, while plaintiffs' allegations about the work performed are undisputed and sufficiently specific to establish entitlement to payment for unpaid wages, as discussed. In addition, Arlindo's notes, to the extent clear, are both incomplete and rough, at best. For example, the bottom of the first page appears to be missing. In any event, in the cases where information regarding job type in the notes is not followed, any reconciliation would not result in higher wages for plaintiffs, as discussed below. In Appendix A filed herewith, I have adjusted some data in the charts, crediting the specific allegations in the declarations over information in the charts where there is a conflict. These adjustments include specifying the weeks in which the stucco work described in paragraph 17 was performed, since the hourly rate

-17-

for such work is much higher, as discussed below. <u>See</u> Arlindo Decl. ¶ 17. This work is allocated to the days in August, September and November reflecting the same number of hours claimed. <u>Id.</u> In addition, I have reduced the hours on the charts of both plaintiffs for one of the three days of work at Sand Lane, since they both stated they worked five hours on August 21, 2004. Arlindo Decl. ¶ 16; Jeanderson Decl. ¶ 16. This reduces the number of days they can claim for spread-of-hours pay and affects their claim for overtime pay.

The amounts sought for unpaid wages sought by plaintiffs are summarized below:

TABLE 1

<u>UNPAID WAGES</u>

| Type of Work and Location, Dates and Number of hours (#), if known | No. of Days | Unpaid Wages: Arlindo | Unpaid Wages: Jeanderson |
|---|---|---|---|
| Block Work : Aug. – Dec. | 53 | $ 2,536.88 | $ 1,602.24 |
| Floors/Sand Lane: 8/21 (5); 9/10 (14) | 1.5 | 240.00 | 210.00 |
| Stucco/Hatfield: Aug. (14), Sept., Nov. | 3 | 892.00 | |
| Cement work/Hatfield: no data | 1.5 | 240.00 | 210.00 |
| Sheetrock and stucco/Hatfield by Arlindo: Nov. | 8 | 1,200.00 | |
| Sheetrock and stucco/Hatfield by Jeanderson: Nov. | 5.5 | | 770.00 |
| Sheetrock, cleaning, limestone: 12/1 (11), 12/2 (10), 12/18 (9) | 3 | 480.00 | 420.00 |
| **Total Unpaid "Straight" Wages** | | $ 5,588.88 | $ 3,212.24 |

Thus, I respectfully recommend that the Court award Arlindo Da Silva $5,588.88 and Jeanderson Da Silva $3,212.24 for "straight time" unpaid wages.

2. <u>Overtime Wages</u>

Plaintiffs also seek overtime compensation for which they were not paid, claiming that they ordinarily worked up to 14 hours a day from August through September 16, 2004 when there were more daylight hours and up to 11.5 hours after September 17, 2004. Arlindo Decl. ¶ 9; Jeanderson Decl. ¶ 9. Plaintiffs rely on the hours set forth in their respective charts, which contain the estimated amount of time each worked per day and their calculations as to the amount of overtime hours worked. Plaintiffs seek overtime pay with respect to block work and, pointing to their charts, Arlindo claims he worked 233 overtime hours and Jeanderson claims he worked 223 overtime hours. Bodden Decl. ¶ 18. Plaintiffs have calculated the overtime pay by multiplying the number of overtime hours by one-half of the hourly rate that they have calculated for block work. As discussed below, plaintiffs' methodology is not entirely correct. They also have miscounted the number of overtime hours on their charts and have not provided an adequate explanation for the calculation of overtime pay for non-block work.

*Determination of Hourly Wage*. In order to calculate overtime wages owed, the court must first determine the "regular rate"

received by plaintiffs.  See 29 U.S.C. § 207(a)(1).[3]  The regular
rate is defined in the implementing regulations "as the hourly rate
actually paid the employee for the normal nonovertime workweek for
which [they are] employed."  29 C.F.R. § 778.108.  The regulation
also makes clear that this regular rate "must be drawn from what
happens under the employment contract."  Id.

Because plaintiffs were compensated by the block installed
rather than by hour, they are classified as "pieceworkers" under 29
C.F.R. § 778.111.  The regular hourly rate for a pieceworker is
determined by dividing an employee's "total earnings for the
workweek from piece rates" by "the number of hours worked in the
week for which compensation was paid."  29 C.F.R. § 778.111(a).  As
plaintiffs note, they contracted with defendants to be paid $4 for
every block that they and Jose, another worker who did not join
this action, installed.  Arlindo Decl. ¶¶ 11-12; Jeanderson Decl.
¶¶ 11-12.  Plaintiffs further estimate that Arlindo and Jose each
worked 652.5 hours while Jeanderson worked 642.5 hours for a total
of 1,947.5 hours[4] and laid 5,169 concrete blocks.  Arlindo Decl.
¶¶ 11-12; Jeanderson Decl. ¶¶ 11-12.  Dividing the total promised

[3]  Plaintiffs seek overtime pay only under New York Labor
Law.  However, the standards for determination of overtime pay in
the FLSA are expressly incorporated by reference in N.Y. Comp.
Codes R. & Regs. tit. 12, § 142-2.2 ("An employer shall pay an
employee for overtime at a wage rate of one and one-half times
the employee's regular rate in the manner and methods provided in
and subject to the exemptions of sections 7 and 13 of 29 U.S.C.
201 *et seq*....").

[4] The total hours worked claimed by Arlindo and by
Jeanderson in the body of their declarations are higher than the
number of hours reflected in their charts.

earnings by total hours, plaintiffs correctly determined a regular rate of $10.62 per hour for block work.

For the workweeks during which plaintiffs worked overtime and performed only block work, the determination of the overtime pay is straightforward: the number of hours worked in excess of 40 hours should be multiplied by $5.31, half the regular rate for block work as discussed above.

However, plaintiffs' charts and the Appendix adapted from the charts indicate that in three of the weeks in which they worked overtime, they performed both block work and other work. As a preliminary matter and as noted previously, plaintiffs' charts do not properly account for the specific work for which plaintiffs have claimed unpaid wages. However, I have generally used the number of hours reflected on the charts, with some changes discussed above reflected in the Appendix. The plaintiffs' allegations regarding the number of hours worked each day on the jobs for which they were not paid are generally consistent with the number of hours reflected on the charts; both make clear that the plaintiffs regularly worked long hours, up to 14 hours a day. The differing descriptions on the charts of the work performed does not diminish the facts alleged by the plaintiffs as to the number of hours worked. Thus, I have overlooked the discrepancies in job descriptions between the charts and plaintiffs' specific allegations. The plaintiffs, who have claimed they were not paid wages for only a fraction of the total number of days that they worked, are likely to have remembered that they were not paid for

certain work and the number of hours they generally worked. It is less likely that they would have accurately remembered what type of work they did each day over the course of the approximately hundred days that they actually worked. In any event, in light of defendants' default and failure to provide records, the plaintiffs should not be faulted for not preparing charts with correct job descriptions.

Moreover, the incorrect attribution of work does not result in a windfall to the plaintiffs. On the contrary, if the Court were to change some of the work in November attributed to block work on the charts to cement or other work, the number of overtime hours would remain the same and the number of days and hours plaintiffs attributed to block work would drop, causing an increase in the regular rate calculated for block work. Since the number of weeks in which plaintiffs worked overtime remain the same, the overtime pay owed in November would be higher. The overtime for block work would be calculated based on a higher regular rate and the overtime for other work, to the extent specified, may also be calculated at a higher rate. By generally using the lower overtime rate calculated above for block work, the calculations of overtime in November herein are lower than the higher regular rates for other work, which is calculated below.

Nonetheless, because the information provided by plaintiffs is sufficient to establish that they performed block work and non-block work in the weeks beginning 8/15/04, 8/29/04 and 10/31/04, I discuss the applicable regulation for such circumstances. The

calculation of the overtime rate during such weeks must account for the other compensation received, as specified in 29 C.F.R. § 778.115. This regulation requires that "[w]here an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates." With respect to these weeks, the Court must first determine regular hourly rates of pay with respect to the other work. Since the plaintiffs were paid by the day rather than by the piece for the other work, the regular rate must be determined in accordance with 29 C.F.R. § 778.112, which provides that:

> If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

Plaintiffs have provided some information regarding their daily wages and number of hours worked with respect to certain unpaid work, as previously discussed. The following table sets forth my calculations for determining the regular rate for such other unpaid work by dividing the total pay based on the daily rate of pay by the total number of hours worked. Where plaintiffs did not provide the number of hours worked per day, I have estimated 14 hours for work where the daily rates were $160 or more for Arlindo

and $140 or more for Jeanderson, which seemed to be the claimed rates for such work, and 11.5 hours where the daily rates are lower.

TABLE 2

CALCULATION OF REGULAR RATE

| Type of Work and Location, Dates and # of hours (#) | Daily rate/ # of days | Total hours | Regular rate:<br><u>daily pay x # days</u><br>total hours |
|---|---|---|---|
| Floors/Sand Lane by Arlindo: 8/21 (5 hrs); 9/10 (14 hrs) | $160/ 1.5 days | 19 | $12.63 |
| Floors/Sand Lane by Jeanderson: 8/21 (5 hrs ); 9/10 (14) | $140/ 1.5 days | 19 | $11.02 |
| Stucco by Arlindo: Aug. (14), Sept. (14)(est.), Nov. (11.5) | $892/ 3 days total | 39.5 | $22.58 |
| Cement work/Hatfield by Arlindo: (14 hrs./day)(est.) | $160/ 1.5 days | 21 | $11.42 |
| Cement work/Hatfield by Jeanderson: (14 hrs./day) (est.) | $140/ 1.5 days | 21 | $10.00 |
| Sheetrock and stucco/Hatfield by Arlindo: (11.5 hrs.)( est.) | $150/ 8 days | 92 | $13.04 |
| Cement work/Hatfield by Jeanderson: (11.5 hrs.) (est.) | $150/ 5.5 days | 63.25 | $13.04 |
| Sheetrock, cleaning, limestone by Arlindo: 12/1 (11), 12/2 (10), 12/18 (9) | $160/ 3 days | 30 | $16.00 |
| Sheetrock, cleaning, limestone by Jeanderson: 12/1 (11), 12/2 (10), 12/18(9) | $140/ 3 days | 30 | $14.00 |

For two of the weeks at issue, the other work performed involved work for which plaintiffs sought unpaid wages discussed above and thus provided sufficient information regarding

compensation to enable determination of the weighted average regular rate for all work performed during those weeks. For example, with respect to work performed during the week beginning August 15, 2004, Arlindo indicates in his chart that he worked three days at Sand Lane and had claimed that he was not paid for one and one-half days of work, which was promised at a rate of $160 per day. In that week, he worked 42 hours performing block work and 33 hours of flooring work, for a total of 75 hours that week. See Appendix A. In accordance with 29 C.F.R. § 778.115, the weighted average regular rate for the work Arlindo performed that week is calculated as follows using the hourly rate for the floor work calculated in Table 1 above and the rate for block work of $10.62:

$$\frac{\text{Block Work}}{42 \times \$10.62} + \frac{\text{Floor Work}}{33 \times \$12.63} \quad \begin{array}{c} \underline{\text{Weighted Aver.}} \\ \underline{\text{Reg. Rate}} \end{array}$$
$$\frac{42 \times \$10.62}{75} + \frac{33 \times \$12.63}{75} \quad = \quad \$\ 11.51\ /\text{hr.}$$

The weighted average hourly rate can similarly be calculated with respect to the work performed by Jeanderson that week, who worked 73 hours that week.

$$\frac{\text{Block Work}}{40 \times \$10.62} + \frac{\text{Floor Work}}{33 \times \$11.02} \quad \begin{array}{c} \underline{\text{Weighted Aver.}} \\ \underline{\text{Reg. Rate}} \end{array}$$
$$\frac{40 \times \$10.62}{73} + \frac{33 \times \$11.02}{73} \quad = \quad \$\ 10.80\ /\text{hr.}$$

Also, the weighted average regular rate for Arlindo can be calculated for stucco and block work he performed during the week beginning August 29, 2004 as follows:

|  | Block Work | Stucco Work | Weighted Aver. Reg. Rate |
|---|---|---|---|

$$\frac{56 \times \$10.62}{81.5} + \frac{25.5 \times \$22.58}{81.5} = \$14.36 \text{ /hr.}$$

However, plaintiffs neither describe the nature of the other work performed by both plaintiffs for the week beginning October 31, 2004 nor provide information as to the compensation paid. Thus, this Court cannot determine the weighted average regular rate of pay for plaintiffs for that week. However, except for the regular rate for cement work performed by Jeanderson at Hatfield Street, the regular rates for all the other work contained in Table 1 are higher than the $10.62 regular rate for block work sought by plaintiffs. Thus, for purposes of calculating overtime involving work for which there is insufficient information to determine the regular rate, I recommend use of the regular rate for block work, which is likely to be lower than the regular rate for the other work. Thus, in calculating overtime for the week of October 31, 2004, the Court should simply use one-half of the regular rate for block work of $10.62, or $5.31.

Finally, plaintiffs seek overtime compensation for weeks during which they performed solely non-block work. According to their charts, both Arlindo and Jeanderson worked 85.5 hours of overtime performing exclusively non-block work for the weeks of 9/5/04, 10/10/04, 10/24/10 and 11/28/04. Again, in the absence of information regarding the type of work or amount of compensation paid, I recommend that the Court use the regular rate for block work in calculating overtime pay.

*Determination of Overtime Pay*.  The Court must then calculate
overtime pay by multiplying the number of hours worked in a week
beyond 40 by the overtime rate, which is one-half of the regular
rate for block work only or the weighted average regular rate, as
discussed.  See 29 C.F.R. §§ 778.111(a), 778.112.  The
calculations, which are set forth in greater detail in Appendix B,
are summarized below:

Arlindo Da Silva

| Type of Work | Total Hours | OT Rate | Overtime Pay |
|---|---|---|---|
| Total Block work | 187.5 | $   5.31 | $     995.63 |
| Total Block and non-block work | 99 | 5.755 7.18 5.31 | 618.87 |
| Unspecified or non-block work | 75.5 | 5.31 | 454.01 |
| TOTAL OT HOURS | 362 | TOTAL OT PAY | $ 2,068.51 |

Jeanderson Da Silva

| Type of Work | Total Hours | OT Rate | Overtime Pay |
|---|---|---|---|
| Total Block work | 218 | $   5.31 | $ 1,157.58 |
| Total Block and non-block work | 33 | 5.40 | 178.20 |
| Unspecified or non-block work | 85.5 | 5.31 | 454.01 |
| TOTAL OT HOURS | 336.5 | TOTAL OT PAY | $ 1,789.79 |

Thus I recommend that the Court award Arlindo DaSilva
$2,068.51 in overtime pay and Jeanderson DaSilva $1,789.79 in
overtime pay.

3.   Spread of Hours Pay Under New York's Labor Law

Plaintiffs request an award for "spread of hours" pay under
New York's Labor Law for the "spread of hours interval."  N.Y.
Comp. Codes R. & Regs. tit. 12 § 142-2.18.  On those days when the
interval between the beginning and end of an employee's workday
exceeds 10 hours, New York law requires that the employee "receive
one hour's pay at the basic minimum hourly wage rate."  Id. § 142-
2.4; see, e.g., Pavia, 2005 WL 4655383, at *8 (awarding spread of
hours pay).  Both plaintiffs claim that each worked over 10 hours
on 80 separate days for which they did not receive spread of hours
pay.  In fact, the chart in Jeanderson's declaration reflects only
78 days.  See Jeanderson Decl. at 4.  In addition, this Court has
reduced the number of hours for one day of work at Sand Lane during
the week of August 15, 2004 from 14 hours to five hours, as noted
in Appendix A.  The prevailing minimum wage at that time was $5.15.
Thus, I recommend that this Court award Arlindo $406.85 for 79 days
of spread of hours pay and Jeanderson $396.55 for 77 days.

4.   Liquidated Damages

Plaintiffs seek liquidated damages under both the FLSA and New
York's Labor Law.  Liquidated damages under the FLSA are
"compensation to the employee occassioned by the delay in receiving
wages caused by the employer's violation of the FLSA."  Herman v.
RSR Secs. Servs., Ltd., 172 F.3d 132, 141-42 (2d Cir. 1999).  In
contrast, "liquidated damages under the Labor Law 'constitute a
penalty,' to deter an employer's willful withholding of wages due."
Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 265 (2d Cir.

1999). Because each award serves fundamentally different purposes, plaintiff may be granted both awards. See Maliza v. 2001 MAR-OS Fashion, Inc., No. CV-07-463, 2010 WL 502955, at *1 & n.4 (E.D.N.Y. Feb. 10, 2010); Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261-62 (S.D.N.Y. 2008); cf. Reilly, 181 F.3d at 265 (plaintiff may recover both liquidated damages under New York Labor Law and pre-judgment interest "because [they] serve fundamentally different purposes").

Section 216(b) of the FLSA provides that an employer shall be liable to the employees who are not paid overtime compensation "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Since this Court has previously found that plaintiff Arlindo is entitled to overtime pay of $2,068.51 and Jeanderson to $1,789.79, I recommend an award of liquidated damages under the FLSA in those same amounts.

Plaintiffs are also entitled to 25 percent of those amounts in liquidated damages if the court finds that defendants acted "willfully" in violating the statute. See N.Y. Lab. Law § 198(1-a). Willfulness, in this context, is found "where the employer, 'knowingly, deliberately, [or] voluntarily' disregards its obligation to pay wages." Ayres v. 127 Rest. Corp., 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998) (quoting P & L Group, Inc. v. Garfinkel, 541 N.Y.S.2d 535, 537 (2d Dep't 1989)); see also Centeno-Bernuy v. Becker Farms, 564 F. Supp. 2d 166, 181 (W.D.N.Y. 2008) ("[W]illfulness [for purposes of liquidated damages] is warranted if substantial evidence tends to demonstrate that the employer knew

or should have known that it was violating the law.") (citing Consol. Masonry Contractors, Inc. v. Angello, 770 N.Y.S.2d 134, 136 (2d Dep't 2003)).

Many courts have found that a defendant's default, in itself, may suffice to support a finding of wilfulness.  See, e.g., Blue v. Finest Guard Services, Inc., No. 09 CV 133, 2010 WL 2927398, at *11 (E.D.N.Y. June 24, 2010); Dong v. CCW Fashion Inc., No. 06 Civ. 4973, 2009 WL 884680, at *4-5 (S.D.N.Y. Feb. 19, 2009); but see Aquilar v. E-Z Supply Corp., No. 06-CV-6790, 2008 WL 905224, at *5 (E.D.N.Y. Mar. 31, 2008).  In any event, the circumstances of the case support a finding of wilfulness.  Not only did defendants not pay the plaintiffs overtime, they simply did not pay Arlindo for 17 days of work and Jeanderson for 14.5 days of work.  This, at the very least, supports a finding that defendants intentionally violated the minimum wage provisions of the Labor Law.  Thus, I recommend that this Court award liquidated damages under the New York Labor Law of $2,016.06 to Arlindo and $1,349.65 to Jeanderson, as well as liquidated damages under the FLSA equal to the unpaid overtime compensation of $2,068.51 owed to Arlindo and $1,789.79 owed to Jeanderson.

In sum, the plaintiffs are entitled to the following damages under the FLSA and Labor Law:

|  | Arlindo Da Silva | Jeanderson Da Silva |
|---|---|---|
| Overtime Wages | $ 2,068.51 | $ 1,789.79 |
| Unpaid Wages | $ 5,588.88 | $ 3,212.24 |
| Spread of Hours | $    406.85 | $ 396.55 |

| Liquidated Damages (FLSA) | $ 2,068.51 | $ 1,789.79 |
| Liquidated Damages (NY) | $ 2,016.06 | $ 1,349.65 |
| TOTAL DAMAGES | $12,148.81 | $ 8,538.02 |

### 5. Prejudgment Interest

Plaintiffs seek prejudgment interest on unpaid wages owed to them under both the FLSA and New York's Labor Law. Federal courts have long recognized that prejudgment interest may not be awarded in addition to liquidated damages for violations of the FLSA. Brock v. Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir. 1988) (citing Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 714-16 (1945)) (additional citations omitted). However, the Second Circuit has also held that "[p]re-judgment interest and liquidated damages under the Labor Law are not functional equivalents" and thus may both be awarded for violations of state wage laws. Reilly, 181 F.3d at 265. As the Reilly court explained, "prejudgment interest" is meant "to compensate a plaintiff for the loss of use money," while, as discussed above, "liquidated damages under the Labor Law 'constitute a penalty.'" Id. (citations omitted). Since liquidated damages awarded under the FLSA for unpaid overtime is designed to compensate employees for delay in payment, such damages are the functional equivalent of prejudgment interest on the overtime pay. Plaintiffs are therefore entitled to an award of prejudgment interest only on unpaid wages and spread of hours pay for which liquidated damages pursuant to the FLSA were not assessed.

Section 5001 of New York's Civil Practice Law and Rules governs the calculation of prejudgment interest for violations of the state's Labor Law. See Pavia, 2005 WL 4655383, at *8. Courts ordinarily apply a statutory interest rate of nine percent per annum in determining prejudgment interest under New York law. N.Y. C.P.L.R. § 5004. Section 5001(b) sets forth two methods of calculating prejudgment interest. First, interest may be calculated from "the earliest ascertainable date the cause of action existed." N.Y. C.P.L.R. § 5001(b). However, "[w]here . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date. Id. To that end, courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest." Conway v. Icahn & Co., 16 F.3d 504, 512 (2d Cir. 1994). Here, because plaintiffs were periodically denied wages during their term of employment with defendants, the court employs the latter calculation method. The court finds the midway point between when "plainitff[s] began and ceased working for defendant[s]" as a "reasonable intermediate date" for purposes of calculating prejudgment interest. Pavia, 2005 WL 4655383, at *8; see also Liu, 2004 WL 33412, at *5 (adopting counsel's 'midpoint of the accrual of damages" date). Because plaintiffs' employment with defendants began on or around August 12, 2004 and ended on or around December 2, 2004, see Compl. ¶¶ 6-7, prejudgment interest will be calculated using an approximate midway point of October 4, 2004.

Plaintiffs are entitled to the following 9% prejudgment interest under N.Y. C.P.L.R. § 5001 on his unpaid wages from October 4, 2004 until entry of judgment. Defendants owe plaintiffs unpaid wages and spread of hours pay in the total amount of $5995.73 for Arlindo ($5,588.88 + 406.85) and $3,608.79 for Jeanderson ($3,212.24 + 396.55). Interest from October 4, 2004 to October 13, 2010 on the unpaid wages and spread of hours pay to Arlindo totals $3,251.01 and to Jeanderson in the amount of $1,956.76.

In addition, Arlindo is entitled to prejudgment interest from October 13, 2010 until entry of judgment at a rate of $1.48 per day and Jeanderson is entitled such prejudgment interest at a daily rate of $0.89.

C.    Attorney's Fees

Both the FLSA and New York's Labor Law allow for an award of "reasonable" attorney's fees. See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). Plaintiffs bear the burden of proving the reasonableness of the fees sought. See Savoie v. Merchants Bank, 166 F.3d 456, 463 (2d Cir. 1999).

The standard method for determining the amount of reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or a "presumptively reasonable fee." Hensley v. Eckerhart, 461 U.S. 424, 433, 1940 (1983); Arbor Hill Concerned Citizens Neighborhood Ass'n, 522 F.3d 182, 188-90 (2d Cir. 2008); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989);

-33-

see also Perdue v. Kenny A., 130 S.Ct. 1662, 1672-73 (2010) (discussing lodestar methodology). In reviewing a fee application, the district court must examine the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case. See Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir. 1985). If any expenditure of time was unreasonable, the court should exclude these hours from the calculation. See Hensley, 461 U.S. at 434; Lunday, 42 F.3d at 133. The court should thus exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). "If such records are inadequate the Court may reduce the award accordingly." Vernon v. Port Authority of New York and New Jersey, 220 F. Supp. 2d 223, 229 (S.D.N.Y. 2002).

A reasonable hourly rate is "the rate a paying client would be willing to pay," "bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. The reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Local Union No. 3 of IBEW, 34

F.3d 1148, 1159 (2d Cir. 1994) (citing <u>Blum v. Stenson</u>, 465 U.S. 886, 894 (1984)). Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. <u>Chambless</u>, 885 F.2d at 1059. The "community" is generally considered the district where the district court sits. <u>See</u> <u>Arbor Hill</u>, 522 F.3d at 190.

Plaintiffs seek $26,592.25 in total attorneys' fees for the work of Marlen Bodden. In her sworn declaration, Ms. Bodden, an attorney with the Legal Aid Society who has represented plaintiffs throughout these proceedings, recounts her legal experience and provides a time sheet describing the work performed and time spent in this matter. She also provides a 2002 National Law Journal survey of average billing rates received by partners and associates in New York law firms. Ms. Bodden states that she is entitled to an hourly rate of $425 for her work in this matter.

The "starting point for determination of a reasonable [hourly rate]" is based on "the fees that would be charged for similar work by attorneys of like skill in the area . . . ." <u>Cohen v. W. Haven Bd. of Police Comm'rs</u>, 638 F.2d 496, 506 (2d Cir. 1980). To that end, the court receives guidance from (1) rates awarded in prior cases; (2) the court's own knowledge of prevailing rates in the district; and (3) evidence submitted by the parties. <u>See</u> <u>Farbotko v. Clinton County of New York</u>, 433 F.3d 204, 209 (2d Cir. 2005) (citations omitted).

In her declaration, Ms. Bodden states she is a 1986 graduate of the New York University School of Law and worked in private

practice for a few years before becoming an attorney with Legal Aid in 1993.  This Court agrees that Ms. Bodden, even though a public interest attorney, should be considered the equivalent of a partner at a private firm for purposes of determining a reasonable fee. See, e.g., Heng Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048(GEL), 2007 WL 1373118, at *4 (S.D.N.Y. May 8, 2007) (FLSA case – associate director of Urban Justice Center with fifteen years of legal experience); Moon v. Gab Kwon, No. 99 Civ. 11810(GEL), 2002 WL 31512816, at *3 (S.D.N.Y. Nov. 8, 2002) (FLSA case – attorney at Lincoln Square Legal Services with twelve years of legal experience); see also Arbor Hill, 522 F.3d at 184 ("The reasonableness of a fee award does not depend on whether the attorney works at a private law firm or a public interest organization") (citing Blum, 465 U.S. at 894); Miele v. New York State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987) ("[W]e have recognized that prevailing market rates are fully applicable to fee awards to non-profit organizations").

However, the rate of $425 sought by plaintiffs on behalf of Ms. Bodden is at the high end of the range of rates received by similarly experienced partners – actual and non-profit equivalents – in this district.  As a preliminary matter, courts have found that the prevaling hourly rates for partners in this district are between $300 and $400.  See Concrete Flotation Sys., Inc. v. Tadco Construction Corp., No. 07-CV-319, 2010 WL 2539771, at *4 (E.D.N.Y. March 15, 2010) (collecting cases); Luca v. County of Nassau, 698 F. Supp. 2d 296, 301-02 (E.D.N.Y. 2010); Gutman v. Klein, No. 03

Civ. 1570, 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009); Whitney v. JetBlue Airways Corp., No. 07-CV-1397, 2009 WL 4929274, at *7 (E.D.N.Y. Dec. 21, 2009); see also Cho v. Koam Med. Servs. P.C., 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) (observing in FLSA case that "[o]verall, hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants") (citations omitted).  Moreover, while Ms. Bodden has considerable experience as a litigator, her background is not as extensive as those "highly experienced and impeccably credentialed" partners who "have been awarded rates on the higher end of the attorneys' fees spectrum." Ueno v. Napolitanto, No. 04 CV 1873, 2007 WL 1395517, at *9 (E.D.N.Y. May 11, 2007) (awarding rates of $450, $400, and $350 for attorneys who have practiced civil rights law for 42, 21, and 29 years respectively and collecting cases).

Also, "the nature of representation and type of work involved in a case are critical ingredients in determining the 'reasonable' hourly rate."  Arbor Hill, 522 F.3d at 184 n.2 (citations omitted). The nature of the work performed in this matter was relatively straightforward, particularly since the defendants defaulted, and no novel or complex issues were raised by plaintiffs.

Ms. Bodden, whose office is located in the Southern District of New York, has referred to rates charged by partners of differing seniority in four large firms whose principal offices are located

in the Southern District[5] in arriving at an average rate of $595.00 for a "high partner", $329.00 for a "low partner" and $462.00 for a "mid-point."  She argues that the $425.00 rate sought "is only $96 above the average rate for the least experienced partners."  Bodden Decl. ¶ 24.  However, the Second Circuit in Simmons v. N.Y. City Transit Auth., 575 F.3d 170 (2d Cir. 2009) clearly requires that the court "apply a presumption in favor of application" of the prevailing rate within the district.  575 F.3d at 175.  Based on this Court's knowledge, the prevailing rates employed by Ms. Bodden in her fee analysis are clearly higher than those charged by partners in this district and involves law firms that have far more attorneys.  In any event, the rates charged by partners in those firms are clearly different from those charged by partners in civil rights practices, with the latter firms often, if not always, commanding a premium because of the nature of the work and the financial wherewithal of the client.

Nonetheless, to overcome the presumption in favor of the in-district rate, "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better result."  Id.  This Court is not persuaded that reasonable paying clients who like plaintiffs, seek to recover unpaid wages under the federal and state labor laws, would not have

_____

[5]Those four firms are Curtis, Mallet-Prevest, Colt & Mosle; Epstein, Becker & Green; Hughes Hubbard & Reed; and Kelley Drye & Warren.  Bodden Decl. ¶ 23.

spent the extra time to look for less expensive local counsel either in Brooklyn or elsewhere in the Eastern District. See Arbor Hill, 522 F.3d at 185 (finding that a reasonable, paying client in the position of a plaintiff suing under the Voting Rights Act "would have made a greater effort to retain an attorney practicing in the Northern District of New York"). Moreover, it is not unreasonable to assume that reasonable, paying clients like plaintiffs would "wish[] to spend the minimum necessary to litigate the case effectively." Id. at 190. Thus, this court finds, as did the Arbor Hill court, that "[t]he rates charged by attorneys practicing in the Southern District of New York would simply have been too high for . . . thrifty hypothetical client[s] – at least in comparison to the rates charged by local attorneys, with which [they] would have been familiar." Id. at 185. This court thus recommends that the fee award should be based on a reasonable hourly rate of $325.00, which is within the range of prevailing hourly rates for partners in this district.

Plaintiffs seek fees for 62.57 hours of work performed by Ms. Bodden in this action. As an initial matter, this Court is troubled by the billing information provided. Ms. Bodden combined multiple tasks into a single billing entry -- most notably one billing entry (out of seven entries total) in which counsel aggregates 42.57 hours of work performed from "2/28/07-3/23/07" for "[d]rafting of motion for default judgement [sic] and various supporting documents. Drafting memorandum of law." Bodden Decl. ¶ 24. While "block billing" is not prohibited, such a practice

makes it difficult for the court to assess the reasonableness of the hours billed.  Sea Spray Holdings, Ltd. v. Pali Financial Group, Inc., 277 F. Supp. 2d 323, 326 (S.D.N.Y. 2003); Rodriquez ex rel. Kelly v. McLoughlin, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999).  "The prevailing and preferred practice is to bill each task separately" so "the court can scrutinize the reasonableness of the time billed with greater accuracy and counsel is not tempted to inflate the actual time spent by clumping multiple tasks together hoping to camouflage the true length of each one."  Molefi v. Oppenheimer Trust, No. 03 CV 5631(FB)(VVP), 2007 WL 538547, at *7 (E.D.N.Y. Feb. 15, 2007).

Without further information and classification, the court is unable to gauge the reasonableness of the time claimed.  Because the quality and complexity of the submissions relating to plaintiffs' motion for default judgment do not, in this court's opinion, reflect 42.57 hours of work, particularly for an experienced practitioner in the field, this Court finds that a reduction in fees is warranted.  In doing so, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'"  Kirsch v. Fleet Street Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (quoting Carey, 711 F.2d at 1146).  Here, the court finds a 10% deduction in hours sought warranted to 56.3 hours.[6]

---

[6]While the Court recognizes that the Legal Aid Society may not place the same emphasis on its billing records as may a large private firm, counsel should be aware in fee shifting cases
(continued...)

Thus, I recommend that the Court award plaintiffs' attorneys fees of $18,297.50.

D.   Costs

Plaintiffs request an award of $590.00 for various costs, including $540.00 for the employment of a Portuguese interpreter and $50 for service of process by way of the Department of State. As a general matter, a prevailing plaintiff in an action under the FLSA or New York's Labor Law is entitled to recover costs from the defendant.  See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). However, only those non-taxable costs that are tied to "identifiable, out-of-pocket disbursements" are recoverable, while those "that should be included in routine office overhead and absorbed in the attorney's hourly rates" are not.  Moon, 2002 WL 31512816, at *8 (quoting Kuzma v. IRS, 821 F.2d 930, 933-34 (2d Cir. 1987)).  Fees associated with translation services constitute those costs that are "customarily . . . charged to the client as disbursements in the New York market, rather than included in the firm's hourly rates," and are therefore compensable.  Id. (allowing recovery of costs for pretrial interpreters in FLSA action).  Under 28 U.S.C. § 1920 and Local Civil Rule 54.1(10), service of process fees are also recoverable, but as taxable costs.  Accordingly, plaintiffs are entitled to award of costs of $590.00.

_____

[6](...continued)
brought in federal court that accurate daily billing records are critical.  If counsel insists on using rates earned by large firm partners as its guidepost for a reasonable rate, her firm should also bear the burden of exercising greater rigor and discipline in its billing practices.

## CONCLUSION

For the reasons stated above, I respectfully recommend that plaintiffs be awarded damages against the defendants as follows: (1) damages for unpaid wages, overtime and spread of hours pay and liquidated damages under the FLSA and Labor Law to Arlindo DaSilva in the amount of $12,148.81 and to Jeanderson DaSilva in the amount of $8,538.02; (2) prejudgment interest from October 4, 2004 to October 13, 2010 of $3,251.01 to plaintiff Arlindo Da Silva and at a daily rate of $1.48 per day until entry of judgment; (3) prejudgment interest from October 4, 2004 to October 13, 2010 of $1,956.76 to plaintiff Jeanderson Da Silva and at a daily rate of $0.89 until entry of judgment; (4) attorneys' fees of $18,297.50; and (5) costs of $590.00.

A copy of this report and recommendation will be filed electronically and notice sent electronically or by regular mail to the parties on this date. Objections to the Report and Recommendation must be filed with the Clerk of Court, with a copy to the Honorable Allyne Ross and the undersigned, by October 12, 2010. Failure to file objections within the time specified waives the right to appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED.**

Dated:    Brooklyn, New York
          September 24, 2010

                              _____/s/_____
                              MARILYN D. GO
                              UNITED STATES MAGISTRATE JUDGE

Copies to:

Bennett Street Development Corp. and William Radu
280 Sand Lane, Staten Island, NY 10305
14 W. Kinney Avenue, Mount Pocono, PA 18344
120 Arthur Avenue, Staten Island, NY 10305